Good morning, Your Honors. And may it please the Court. My name is Oleg Kras. I'm an attorney with the firm of Kuligadler Kronish, and I represent the petitioner Victor Amaya. With the Court's permission, at this time, I would like to reserve two minutes for rebuttal, and I will watch my time. The single overarching question before this Court is whether the Board may deny a motion to accept the late filed brief, in light of extraordinary circumstances offered in that motion, and still proceed to rule on the merits of that appeal. In Mr. Amaya's case, they may not. In doing so constitutes a violation of his due process rights, and an abuse of discretion by the Board. Mr. Amaya is indigent. He does not speak a word of English. And throughout the BIA proceedings, Mr. Amaya has been represented by counsel who defrauded him, not once, but twice. In light of that, and despite all of that, Mr. Amaya still managed to file an appellate brief with the BIA. That brief, however, was two months late. Nevertheless, the BIA had still plenty of time to rule on that brief, as the BIA still took an additional three months to issue a decision in Mr. Amaya's case. Mr. Krause, how many times does your counsel have to fall for the notario scam before, at some point, we say, look, it's your responsibility to make sure that you've got a competent lawyer representing you? Well, Your Honor, actually, as this court held in Garamani v. Gonzalez, when an alien states facts that constitute ineffective assistance of counsel, the Board of Immigration Appeals is under an affirmative obligation to accept those facts as true, unless they're, quote, inherently unbelievable. Given Mr. Amaya's indigence, his lack of English, and his complete and total reliance on counsel, it is not inherently unbelievable that Mr. Amaya could not have been defrauded twice. But, you know, you look at the affidavit, and if there's any credence to the word cookie cutter affidavit, these qualify. First of all, there's two Mr. O'Rourkeses who, quote, defrauded him. The language is exactly the same. One was named Walter. One had a different first name. He says, I went to them. They said they were a lawyer and a notario, and I believe he was an attorney who was a notario, but notaries are, in my country, are also lawyers. He says that the first time. He says it the second time. He uses exactly the same language. He then goes on to cite the Ninth Circuit Court of Appeals case in Lopez, and basically, other than changing the name and the dollar amount from 500 to 300, it's the same affidavit. That is correct, Justice Ginsburg. Why wouldn't the BIA be justified in saying this is not a basis? They'd already given him the right to appeal. They said, okay, your appeal wasn't timely, and they credited him with that. They told him that he needed to file a brief, and then he files the exact same affidavit to the BIA. Why aren't they justified to say, okay, one is okay, but two is not okay? Well, Justice McKeown, the BIA is not justified in denying Mr. Amaya's brief precisely because of that, because on the face of the pleadings, it is apparent that Mr. Amaya has had very limited choice of counsel, and you're absolutely correct. Those pleadings are virtually the same, but at the time that the Board accepted, or rather received Mr. Amaya's late-filed brief, they didn't just accept a late-filed motion. The brief accompanied that motion. And in a similar circumstance, this Court held in Singh v. INS, and the citation for that is 340 F3D 802, that when the Petitioner was denied an opportunity to file a late-filed brief, even the Petitioner's motion, denying the Petitioner's motion in that case, which was filed two months late, without the appellate brief, constitutes a denial of due process. Here, Mr. Amaya did not simply ask the Board to file an appellate brief at some point in the future. He already filed that brief, and there was no undue burden on the Board to consider at that point prior to issuing its decision. I'm not sure you're really addressing the concern that Judge McKeown and I are asking you about. You have to convince us first that the Board abuses discretion. If it violated its due process rights, it did so as a matter of law. But the question that we're asking you has to do with the evidence that was before the Board, which is that this guy is either so unfamiliar with U.S. legal principles that he fell twice for the same Notario scam, or the Board could have looked at the cookie-cutter declarations and the fact that he's coming back time and again saying, oh, I did it again. I was fooled by the Notario. Please excuse and give me more relief. And at some point, doesn't the Board have the authority to say, enough. You know, we cut you some slack the first time, but the second time it doesn't look to us like you're completely blameless here. And you're essentially asking us as a matter of law to declare that it was a due process violation, no matter how many times this guy fell for the scam. Well, certainly it doesn't mean that no matter how many times he asks the Board for leave to file the brief. But certainly in this situation, and as the Court held in Grimani v. Gonzalez, the allegations of ineffective assistance of counsel must toll any numerical deadlines, unless those facts are inherently unbelievable. Did he make any showing that he was prejudiced? Well, Your Honor, in a typical due process challenge, you are correct. A petitioner must show that he's prejudiced by the order he's seeking to challenge. An immigration judge said that Amaya never testified that he personally was persecuted. He was complaining about just generalized conditions in El Salvador. Have you contradicted that finding in any way? No, Your Honor, but we have also not seen the appellate brief, which Mr. Amaya filed with the Board of Immigration Appeals. Because the Board returned that Mr. Amaya, that appellate brief is not part of the appellate record. Well, but the brief is argument, and the testimony at the hearing is evidence. So he was represented by counsel at his hearing, correct? Correct. And the judge asked the counsel, is the only thing you're complaining about general human rights conditions in his country? And then his lawyer says, that's correct. He just fears general violence conditions. Okay, any additional factors, the judge said? And he says, no, Your Honor, we'll submit on the written application. That is correct. Is there any legal basis on which he could obtain relief, given that conscription of the case that he's put before the immigration judge? Well, the answer to that is twofold, Your Honor. First of all, we don't know what additional arguments Mr. Amaya may have made in his late filed brief, because that brief is not part of the appellate record. Well, he's stuck with the record below, isn't he? He is, Your Honor. But he could have made additional arguments in his late filed brief while he's eligible for asylum. Can you think of any arguments? Well, for instance, Your Honor, he could have made an argument that he's eligible for relief under the UN Convention Against Torture. And that could have been a viable And what evidence does he have beyond the general country conditions that he has a reasonable fear of future torture should he be returned to El Salvador? He hasn't made any additional allegations regarding that claim, Your Honor. But he could have expanded on that claim in his appellate brief. Well, he couldn't have expanded. See, I think we're kind of crossing our discussion here. He could have made a compelling or sympathetic argument, but he would still be stuck with his evidence of which there is none. But, Your Honor, at this point, we're starting to look at the merits of Mr. Amaya's case. And as this court held in Escobar-Ramos v. INS, when the petitioner does not challenge directly the immigration judge's decision, that decision, the merits of that decision, are not before this court. Instead, what is before this court is The problem I'm having is what evidence do you have to convince us of the prejudice problem of the due process file? But, Your Honor, in proceedings like this, this court held in Derringer v. Reno, that where an alien is prevented from filing an appellate brief due to counsel's error, that error effectively terminates those appellate proceedings before the court. But Derringer case summary didn't even have an appeal at all? Well, Your Honor, effectively, Mr. Amaya did not have an appeal at all either because, effectively, the VA dismissed his appeal. Well, that's different now. Under the VA's rules, with or without a brief, if it rules on the merits, even if it dismisses or denies the petition, it has still effectively ruled on the merits, correct? Yes, Your Honor. So he did get a merits determination, although one he honestly isn't happy with. Well, Your Honor, because the VA never actually considered the arguments in that case and still made the determination on the merits, Mr. Amaya was effectively deprived of that appeal because the VA could only have reviewed the record below. Mr. Crosby, you've got about a minute left. Did you want to reserve it? I would like to reserve it, Your Honor, unless you have any questions. Thank you. Can we hear from the government? Good morning. Good morning. May it please the Court, Chris Fuller for the Attorney General. I do apologize. The Court issued an order not too long ago requesting us to respond to whether or not particular cases would apply in this case. We did not get that order. We sent to the clerk of the Court, Ms. Wong, a letter response and a declaration explaining that we hadn't received that. Now you know how many petitioners feel when they're dealing with the VA. Indeed. Indeed. Yes, Your Honor. The response to that is quite brief, and that is that the basic question is whether or not the jurisdictional bar in the INA section, 8 U.S.C. 1252A2B, applied, and the two cases cited by the Court referenced and discussed that section in detail. And the answer, briefly, is that that section does not apply, and we have not asserted that jurisdictional bar here. Instead, we have relied on the Court's precedent in Ekimian and Abbasi for the argument that the Court does not have jurisdiction to review the unfettered discretion of the Board to accept or reject a late-filed brief. And we've explained that in our brief, and so ultimately the 1252A2B argument really does not apply, and we've not asserted the same here. So we do. So we can read Samaritan's? Is that the bottom line? No, the bottom line is we think that there's no review by the Court of the Board's decision, the discretionary decision to reject or accept a late-filed brief, just like in Ekimian, which was a motion to reopen sequence that the Congress has, in fact, established, addressed the motion to reopen, saying that you're allowed one motion to reopen and one exception to that if you're late within a certain time frame, and one exception to that time frame, which was if you are to change country conditions for the purpose of making a relief thing. But no other circumstance for a late-filed brief did Congress address. The Attorney General never promulgated the rule, and in one line said that the Board could, of its own motion, reopen. So it was a strictly regulatory grant by the Attorney General to the Board, something that the Congress had never discussed. This Court in Ekimian, and then again in Abbasi, and then in about 15 unpublished cases applying Abbasi, used the Heckler v. Cheney example in which the APA, the Administrative Procedure Act, where it grants the agency unfettered discretion and provides no meaningful guidelines, then there is no basis for the Court's jurisdiction, hence no review. The Court used it. Let me ask you a question. We have another case on our calendar. It was Zamora-Torral, which was submitted, and it had a similar jurisdiction problem in it, and we received from the government a withdrawal of its jurisdictional argument. Are you familiar with that case? I'm sorry, Your Honor, I am not. But I'd be happy to explain if you'd like me to address the issue. Well, it just is a question of trying to have some consistent position out of the government on this issue. Well, 1252A2B2 applies, and the case law is really quite clear in this jurisdiction, and by its language, only where the authority to exercise discretion is referenced by Congress in the INA. And hence, even if we had argued 1252A2B2 in this case because this is strictly regulatory, it would not apply. And hence, I'm not familiar with that Zamora case. That may be the circumstance why there was a withdrawal. Ultimately, there are some discrepancies throughout the different circuits in the United States. We filed briefs in all of them, and there may have been. Well, the discrepancy appeared to us to be just an inconsistency in the position of one oil attorney versus another oil attorney. That's the problem. Well, I understand that. I think that in this case, at least we've remained consistent. I cannot speak for others, and we're trying, to be honest with you, in our office, we've expanded. We're now close to 300 lawyers in our office, and we're doing our best to maintain consistency throughout the United States. So I cannot speak to that. Ultimately, the- But would you just step back then if that case did involve a situation where the discretion at issue was not one that's laid out in the statute? So you're saying, well, that's not the situation here. You have another basis for which you think we don't have jurisdiction. That's correct. And that's based on what? On this court's precedent, Ekimian and Abassi, in which the court stated, basically, that following the Heckler versus Chaney model, where Congress in a statute granted discretion to the agency, but provided no meaningful guidelines to assess whether or not that discretion had been abused. There is no, what's generally called unfettered discretion. The court does not review that. Although there was no statutory grant here, it's completely regulatory. So the Ekimian court analogized Heckler versus Chaney and said where straight regulatory grant by the attorney general to his delegate, the board, states you can sua sponte reopen on your own discretion without giving any guidelines. The court then found that that sua sponte authority is unreviewable. Mr. Fuller, let me ask you this. Suppose we assume we have jurisdiction and we assume that the BIA should not have rejected the brief. In that event, do we presume prejudice? No, I don't think so. I think the case law is quite clear in this jurisdiction that for a due process argument, for due process claim to be valid and recognized, there has to be substantial prejudice. Even if he was not able to pursue an appeal? Well, he was able to pursue an appeal. Ultimately, if his brief was improperly. His brief was improperly filed. As mentioned earlier, the board could have dismissed the claim without considering the merits. It honored, however, his petition and his petition for appeal, all right, which he filed late. And they cited the appeal, but without the benefit of his brief. That's exactly right. If we find that was improper, if we find that was improper, do we then assume prejudice until we go back and hear his appeal? Well, I'm not sure how you can assume prejudice, particularly when on this record where his attorney, his attorney, not a notarial, but his attorney in the immigration court stated to the immigration judge after questions about Mr. Amaya on the stand with an interpreter. He basically stated, all I'm complaining about here is that my country is in turmoil and there's civil and criminal distress going on. The judge then left Mr. Amaya's testimony, went directly to his counsel and said, counsel, is there anything other than this claim? And his counsel said, no, we submit it on the written application. So if, in fact, you say that to presume prejudice is to go back to the immigration judge in spite of the counsel. And he's made no claim, by the way, that that counsel was ineffective. There's no claim in this court that his counsel in immigration court was ineffective. He's not challenging that immigration judge's decision. He's simply saying, I should have got a brief file. And the board should have granted me. We provided exceptional circumstances. The court has acknowledged the unusual circumstances here where he had a counsel, had an attorney, a recognized attorney in immigration court, left that attorney, went to a notarial, was notarial, did not serve him well. He then filed his own, apparently with some assistance, a motion to accept the late petition for appeal, which the which the board allowed and then considered because, in fact, this jurisprudence in this circuit, a notice of appeal oftentimes is enough to to to get a merits decision from the board. They honored that, set a briefing schedule. He went back to another notarial, according to his own motion, and yet didn't file a brief until two months after the board's argument. To his credit, when he comes before the board to ask for a continuum for a brief, he actually brings the brief. I mean, he sets it up for the board. At that point, they haven't decided this case. That's right. And based on the cases set up by counsel this morning, you're supposed to presume the accuracy of the statements in his affidavit or his declaration. Why wouldn't it be in the discretion at that point, given the stage of the proceeding, to refuse to accept his brief? Well, based on the scenario that this court has already questioned opposing counsel on, and that is that how many times can you go to the same well and claim the same thing and make it a legitimate argument? In other words, he's he had an attorney once. He understood what attorneys really are. He goes to a notarial and then and then says, I didn't. I thought they were attorneys. Then he claims again. I went to another notarial and I thought he was an attorney. Well, but he went to notarial twice and the first time he claimed and got accepted by the board. How many times can you cry wolf? Ultimately, that becomes a question of is the board abusing his discretion or did he give the board, given the full opportunity to look at it is that, you know, we've all been to law school. And so maybe we're not going to fall for the same stand twice. But he actually paid money for the second individual who claimed to be an attorney and was going to file his brief. So it wasn't simply a question of saying, oh, I called this guy up or whatever. He actually paid him money to carry this out. So the question then becomes, we don't know from the denial by the V.I.A. why they denied. Well, but there but there are. But we just we we are, of course, speculating here like we were the V.I.A. Maybe we wouldn't think he should fall for it twice, but we don't know that that's the reason. So he's not he's not somebody who's just trying to do the same thing twice. He basically got policed twice. He's not well-educated. It is said that the IRS is more competent. So why? Why shouldn't we at least know why the V.I.A. denied? Well, because the grant of discretion to accept or reject a late brief provides no meaningful criteria to assess that. It's a one line statement. It's H.C.A. for Section one oh three point three. And it states in one sentence in its discretion, the board may consider a brief that has been filed out of time. And that's all enhances its unfettered discretion. There are no got meaningful guidelines to assess whether or not an excuse is a good enough excuse or not a good enough excuse. Ultimately, this is why it can be applied because of the heckler versus Cheney argument that there are no meaningful guidelines for this court to assess whether or not the board should have done X or should have done Y. There's no meaningful way for this court to assess the board's exercise of discretion here. You may feel personally that they should have given him another chance. You may feel just the opposite. He had his chance. The due process requires an opportunity to be heard. And he was granted that opportunity. They assessed his case on the merits as best they could. Found ultimately that he had no claim for asylum. Well, that's the dilemma, isn't it? Because if in fact you assert jurisdiction and there still are no meaningful guidelines, how do you then as a court assess the board's actions? And that's because there are no meaningful guidelines. It really gets you right back to the jurisdiction. You really can't have, you know, there's nothing here for you to review. Well, you're out of time. Thank you very much. Mr. Cross, you get the last word. Thank you, Your Honor. I'd like to make two points. First of all, with respect to jurisdiction, as counsel already conceded, the jurisdictional bar of section 1252A to B does not apply. And that is what the court held in Spencer Enterprises and Medina Morales. Second, section 1252A to B specifically states that nothing in that decision, nothing in that section precludes your view of constitutional claims or questions of law. And second and final point, with respect to no meaningful review, to the extent that this court finds that it has no way to review the Board of Immigration's decision, it should remand this case back to the DIA so that it could either review Mr. Amaya's late-filed brief or provide a reasoned explanation for why it denied Mr. Amaya's motion. Thank you. Thank you, gentlemen. The case just argued is submitted. Mr. Cross, you accepted this case as an appointment on a pro bono basis, is that right? Yes, Your Honor. And we want to thank you very much for doing that. Absolutely.
judges: Silverman, McKeown, Tallman